UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

MI-BOX of North Florida, LLC,
    Plaintiff

    v.                                          Case No. 24-cv-0253-SM-AJ
                                                  Opinion No. 2024 DNH 102

MI-BOX Florida, LLC,
    Defendant

**O R D E R**

MI-BOX of North Florida ("MBNF") originally filed this case in the Florida state circuit court and it was removed to the United States District Court for the Middle District of Florida. Subsequently, defendant MI-BOX Florida ("MI-BOX") invoked the forum selection clause in one of the parties' contracts and moved to transfer the claims against it to this court. The district court in Florida agreed and transferred plaintiff's claims against MI-BOX to this forum.

Pending before the court is MI-BOX's motion to dismiss count five of plaintiff's complaint, in which MBNF alleges that MI-BOX violated Florida's Sale of Business Opportunity Act, Fla.

Stat. § 559.801, et seq. MBNF objects. For the reasons discussed, that partial motion to dismiss is granted.

**Standard of Review**

When considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, disregards legal labels and conclusions, and resolves reasonable inferences in the plaintiff's favor. See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017). The court may also consider documents referenced by or incorporated into the complaint. See Kando v. Rhode Island State Bd. of Elections, 880 F.3d 53, 56 (1st Cir. 2018).

To avoid dismissal, the complaint must allege sufficient facts to support a "plausible" claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To satisfy that plausibility standard, the factual allegations in the complaint, along with reasonable inferences, must show more than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Lyman v. Baker, 954 F.3d 351, 359-60 (1st Cir. 2020) ("For the purposes of our [12(b)(6)] review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or

merely rehash cause-of-action elements.") (citation and internal punctuation omitted).

In other words, the complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations as to each of the essential elements of a viable claim that, if assumed to be true, allow the court to draw the reasonable and plausible inference that the plaintiff is entitled to the relief sought. See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34, 38-39 (1st Cir. 2010).

**Background**

According to the complaint, MI-BOX "is a business that offers and sells distinctive storage and moving services, featuring the use of proprietary lift systems, portable storage boxes, as well as related products and services, all using certain proprietary marks and a system." Complaint (document no. 9) at para. 6. In March of 2021, the parties signed a "Dealership Agreement," pursuant to which MI-BOX agreed to sell and MBNF agreed to acquire "a MI-BOX Dealership within the State of Florida." MBNF also signed a "MI-BOX Equipment Purchase and Trademark License Agreement" which established the terms under which it would purchase MI-BOX equipment and utilize MI-BOX trademarks and service marks.

MBNF's claims turn largely on its assertion that although the parties' contracts might suggest otherwise, it actually purchased a MI-BOX "franchise" (rather than a "dealership"). And, says MBNF, because it purchased a franchise, MI-BOX was obligated (but failed) to comply with various state and federal laws governing the sale of franchises.

In count five of its complaint, however, MBNF advances a slightly different claim that does not require a determination of whether it purchased a "dealership" or a "franchise." Instead, count five turns on whether MBNF purchased from MI-BOX a "business opportunity," as that phrase is defined by Florida law. See generally Sale of Business Opportunity Act, Fla. Stat. § 559.801, et seq. (the "FSBOA"). According to MBNF, the "Dealership Agreement and the Purchase Agreement offered to [MBNF] by [MI-BOX] constitute business opportunities under Florida law." Complaint at para. 63. Moreover, says MBNF, MI-BOX failed to provide it with several disclosure statements that are required by the FSBOA whenever a "purchaser signs a business opportunity contract." Fla. Stat. § 559.803.

Plainly, then, the viability of that claim hinges on whether the rights and interests plaintiff purchased from MI-BOX meet the statutory definition of a "business opportunity" under

Florida law.  As it applies to this particular case, the phrase "business opportunity" means:

> the sale or lease of any products, equipment, supplies, or services which are sold or leased to a purchaser to enable the purchaser to start a business for which the purchaser is required to pay an initial fee or sum of money which exceeds $500 to the seller, <u>and</u> <u>in which the seller represents</u>:
>
> \* \* \*
>
> (4) That the seller will provide <u>a sales program or marketing program</u> that will enable the purchaser to derive income from the business opportunity.

Fla. Stat. § 559.801(1)(a)(4) (emphasis supplied).  <u>See also</u> Complaint at para. 62 (invoking the "sales program or marketing program" provision of the FSBOA).  There is, however, an exception to that subsection of the statute which provides that,

> this paragraph does not apply to the sale of a sales program or marketing program made in conjunction with the licensing of a trademark or service mark that is registered under the laws of any state or of the United States if the seller requires use of the trademark or service mark in the sales agreement.

<u>Id</u>.

In response to MBNF's invocation of the Florida Sale of Business Opportunity Act, MI-BOX says two things.  First, it notes that nowhere in the contracts between the parties is MI-BOX obligated to provide MBNF with a "sales program" or a

5

"marketing program."  Moreover, and perhaps more importantly, the complaint lacks any such allegations.  Consequently, says MI-BOX, the rights and interests purchased by plaintiff do not meet the statutory definition of a "business opportunity," the FSBOA has no application, and count five of the complaint fails to state a viable claim.

Second, MI-BOX says that even if the court were to construe the transaction between the parties as one involving the purchase and sale of a "business opportunity," the exception set forth in section 559.801(1)(a)(4) would render the FSBOA inapplicable to this particular situation.  As noted above, that exception provides that, "this paragraph does not apply to the sale of a sales program or marketing program made <u>in conjunction with the licensing of a trademark or service mark</u> that is registered under the laws of any state or of the United States <u>if the seller requires use of the trademark or service mark in the sales agreement</u>." (emphasis supplied).

While there appears to be little precedent discussing this issue, at least one court has addressed the "sales or marketing program" exception to the FSBOA.  <u>See</u> <u>Barnes v. Burger King Corp.</u>, 932 F. Supp. 1420 (S.D. Fla 1996).  In <u>Barnes</u>, the United States District Court for the Southern District of Florida

concluded that the sale of a Burger King franchise to the plaintiff "made in conjunction with the licensing of a [registered] trademark or service mark" was excepted from the provisions of the FSBOA by section 559.801(1)(a)(4).  Id. at 1434.  Citing Barnes, the United States District Court for the Northern District of Georgia reached a similar conclusion when addressing the sale of a business franchise under the analogous "Georgia Sale of Business Opportunities Act," O.C.G.A. § 10-1-410, et seq.  See Am. Casual Dining, LLP v. Moe's Southwest Grill, LLC, 426 F. Supp 2d 1356 (N.D. Ga. 2006) ("[T]he sale at issue here is clearly excepted from the GSBOA definition of 'business opportunity.'  It is undisputed that the sales and marketing programs associated with the Moe's franchise system were provided to American Casual in conjunction with the licensing of registered trademarks and service marks.").

So it is in this case.  Indeed, the court need not resolve whether MI-BOX was obligated to provide MBNF with a sales or marketing program because, even assuming it was, it is plain that such a commitment was made in "conjunction with the licensing of a [registered] trademark or service mark."  Consequently, this particular transaction is specifically exempted from the scope of the FSBOA.

MBNF's argument to the contrary misses the mark. It says the sale of a franchise (assuming this was such a sale) is only exempt from the provisions of the FSBOA if the requirements of Fla. Stat. § 559.802(1) are met. That section of the FSBOA broadly exempts from its scope the sale of any franchise that meets the Federal Trade Commission's definition of "franchise," provided the franchisor has made certain filings with the Florida Department of Agriculture and Consumer Services. Because MI-BOX never made such filings, MBNF asserts that it is not exempt from the FSBOA. The court disagrees.

That the transaction between the parties is not broadly exempted from the provisions of the FSBOA by section 559.802(1) does not preclude the possibility that it is specifically exempted by the "trademark or service mark" exclusion of section 559.801(1)(a)(4). In other words, the relevant inquiry is not whether MI-BOX generally complied with Florida and/or FTC rules governing the sale of franchises, but rather whether the transaction between the parties meets the statutory definition of "business opportunity." It does not.

## Conclusion

It is unlikely that the parties' contracts obligate MI-BOX to provide MBNF with any sort of sales or marketing program

8

(plaintiff's arguments on that point are not particularly compelling). It is, therefore, unlikely that the FSBOA applies to this transaction at all. But, even assuming that MI-BOX <u>was</u> obligated to provide MBNF with a sales or marketing program, such a program was plainly being sold "in conjunction with the licensing of a [registered] trademark or service mark" and, therefore, the transaction is exempt from the provisions of the FSBOA. Fla. Stat. § 559.801(1)(a)(4). In either scenario, the FSBOA does not apply to this particular circumstance. Accordingly, defendant's partial motion to dismiss (**document no. 50**) is granted and count five of plaintiff's complaint is dismissed for failure to state a viable claim.

  **SO ORDERED.**

            _____
            Steven J. McAuliffe
            United States District Judge

November 25, 2024

cc: Counsel of Record