UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

MI-BOX of North Florida, LLC,
      Plaintiff

      v.                                    Case No. 24-cv-0253-SM-AJ
                                            Opinion No. 2026 DNH 026

MI-BOX Florida, LLC,
      Defendant

**O R D E R**

MI-BOX of North Florida ("MBNF") originally filed this case in the Florida state circuit court and it was removed to the United States District Court for the Middle District of Florida. Then, the defendant, MI-BOX Florida ("MI-BOX"), invoked a forum selection clause in the parties' contract and moved to transfer the claims against it to this court. The district court in Florida agreed and transferred the action here.

Pending before the court is MBNF's motion for summary judgment on three of the four remaining counts in its complaint: violation of Florida's Deceptive and Unfair Trade Practice Act (count one), fraudulent inducement (count two), and rescission (count four). As to those claims, MBNF asserts that there are no genuinely disputed material facts and says it is entitled to

judgment as a matter of law.  Mi-Box objects.  For the reasons discussed, MBNF's motion is denied.

Also pending is MI-BOX's request for the re-opening of discovery and other relief.  See generally Fed. R. Civ. P. 54(d).  That request is also denied.

## Standard of Review

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  Summary judgment is appropriate when the record reveals that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit."  Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).  When material facts are genuinely disputed, such a dispute must be resolved by a trier of fact, not by the

court on summary judgment.  See, e.g., Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002).

## Background

According to the complaint, MI-BOX "is a business that offers and sells distinctive storage and moving services, featuring the use of proprietary lift systems, portable storage boxes, as well as related products and services, all using certain proprietary marks and a system."  Complaint (document no. 9) at para. 6.  In March of 2021, the parties signed a "Dealership Agreement," pursuant to which MI-BOX agreed to sell and MBNF agreed to acquire "a MI-BOX Dealership within the State of Florida."  MBNF also signed a "MI-BOX Equipment Purchase and Trademark License Agreement" with a related entity (not a defendant), which established the terms under which it would purchase MI-BOX equipment and utilize MI-BOX trademarks and service marks.  The contract between MBNF and MI-Box is at issue in this litigation.

MBNF's claims turn largely on its assertion that although the parties' contract might suggest otherwise, it actually purchased a MI-BOX "franchise" (rather than a "dealership"). And, says MBNF, because it purchased a franchise, MI-BOX was obligated (but failed) to comply with the pre-sale disclosure

requirements of state and federal consumer protection laws governing the sale of franchises.  Moreover, says MBNF, the documents that MI-BOX did provide were materially false and misleading.  MI-BOX, on the other hand, denies that it sold a franchise to MBNF or that the contract at issue created a franchisor-franchisee relationship between the parties.  It also denies that any of the documents it provided to MBNF were materially false or misleading.

Finally, the court notes that the parties disagree on another fundamental issue: whether the substantive law of New Hampshire or Florida governs their dispute.  Their contract contains a choice of law provision which states that the contract itself, as well as the parties' rights and responsibilities arising out of it, shall be interpreted in accordance with New Hampshire law.  Yet, MBNF advances two statutory claims under Florida law.  Resolving the choice-of-law question is, then, potentially dispositive of at least some of MBNF's claims.

**Preliminary Matters**

I.   <u>Defendant is not Entitled to Relief under Rule 56(d)</u>.

Before addressing the substance of MBNF's motion for summary judgment, the court turns first to MI-BOX's request for

4

relief under Rule 56(d).  MI-Box asserts that the court should "deny or defer" summary judgment on grounds that it has not yet had the opportunity to obtain necessary discovery.  Despite that claim, however, MI-BOX has objected to MBNF's motion on substantive grounds.  Both this court and the court of appeals have made clear that, generally speaking, such a request/tactic is not permitted.  See, e.g., C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 44 (1st Cir. 1998) ("a party ordinarily may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful.");[1] Morse v. TBC Retail Grp., Inc., No. 13-CV-65-SM, 2013 WL 6730107, at *2-3 (D.N.H. Dec. 19, 2013) ("absent unusual circumstances, a party cannot object (on substantive grounds) to a pending motion for summary judgment, while also seeking time for additional discovery if that objection proves unavailing.") (citations omitted).  That MI-BOX has submitted a substantive objection to MBNF's motion for summary judgment is, under the circumstances presented, a sufficient reason to deny it relief under Rule 56(d).

---

[1]    "Rule 56(d) was formerly Rule 56(f).  This change in nomenclature is unimportant; the textual differences between current Rule 56(d) and former Rule 56(f) are purely stylistic.  Consequently, the case law developed under the earlier version remains authoritative, and we refer to it where applicable." Jones v. Secord, 684 F.3d 1, 5 n.2 (1st Cir. 2012).

But, even turning to the merits of MI-BOX's motion, it must necessarily be denied as insufficiently supported. As the court of appeals has noted,

> Rule 56(d) is not meant to clear the way for additional discovery on demand. A party seeking additional discovery must provide the court with:
>
> > a timely statement — if not by affidavit, then in some other authoritative manner — that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.
>
> We have characterized this showing as encompassing five elements: authoritativeness, timeliness, good cause, utility, and materiality.

Emigrant Residential LLC v. Pinti, 37 F.4th 717, 724-25 (1st Cir. 2022) (quoting Vélez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004)) (emphasis supplied). Mi-Box's request for relief under Rule 56(d) fails to meet those requirements.

According to MI-BOX, "discovery remains open" and it complains that it "has not yet been permitted to examine Plaintiff or its principal." Defendant's Opposition (document no. 67) at 2. See also Declaration of Edward Smith, Managing Member of MI-BOX (document no. 67-1) at para. 17 (same). Yet, neither of those statements is supported by the record.

6

Discovery in this matter closed more than four months ago.  See Discovery Plan (document no. 58) at 3.  Moreover, MBNF asserts - without contradiction - that:

> This case has been pending since August 2024.  Since then, Defendant has never noticed the deposition of a single witness, including Plaintiff or any third-party.  Instead of moving swiftly to advise this Court of the need for additional discovery after the Motion [for Summary Judgment] was filed, Defendant waited until its Response to first raise this issue.

Plaintiff's Reply (document no. 68) at 2 (emphasis supplied). MBNF also points out that MI-BOX never sought to extend the (now-closed) discovery period nor did it notify the court of any difficulties obtaining discovery.  Id.

MI-BOX has failed to comply with the requirements of Rule 56(d) and neglected to show that it is entitled to the relief it seeks.  Consequently, its request for relief under Rule 56(d) is necessarily denied.

II.  Governing Law.

As noted above, MBNF brings two claims against MI-BOX pursuant to Florida law.  First, that MI-BOX violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203(3); and, second, that MI-BOX violated Florida's Franchise Act, Fla. Stat. § 817.416(2)(a) (the latter statutory

7

claim is not presently at issue).  Pointing to the "Applicable Law" provision of the contract, MI-BOX denies (without further elaboration) that either Florida statute applies to the parties' relationship, adding only that the "applicability of Florida's consumer protection statutes to a dealer relationship governed by New Hampshire law is not self-evident and cannot simply be presumed."  Defendant's Opposition (document no. 67) at 11.

For its part, in support of its argument that Florida law applies, MBNF relies solely on the claim that MI-BOX has "waived" any argument against the application of Florida law by its litigation conduct - that is, by failing to raise any choice-of-law argument previously and by affirmatively relying upon Florida law in support of its earlier motion to dismiss MBNF's claim under the Florida Business Opportunity Act.  But, like MI-BOX's argument to the contrary, that assertion is also entirely undeveloped.[2]

---

[2]    Earlier in this litigation, MI-BOX moved to dismiss MBNF's claim under Florida's Business Opportunity Act.  It argued persuasively (and successfully) that MBNF did not purchase a "business opportunity," as that term is defined in the Florida Business Opportunity Act, Fla. Stat. § 559.801, et seq.  See generally Order Granting Defendant's Motion to Dismiss (document no. 56).  MI-BOX did not, however, assert that the Florida Business Opportunity Act was inapplicable under the contract's choice-of-law provision.  That silence, says MBNF, amounts to a "waiver" that now precludes MI-BOX from raising any choice-of-law argument.

Generally speaking, a court exercising diversity jurisdiction applies the choice-of-law principles of the forum state - here, New Hampshire.  See Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 41 (1st Cir. 2020) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Although it is not entirely clear whether that principle applies in this case, see Meyer v. Callahan, No. 09-CV-106-PB, 2010 WL 4916563, at *1 n.1 (D.N.H. Nov. 29, 2010) (discussing choice-of-law principles in the context of a case - like this one - that has been transferred to a different district pursuant to 28 U.S.C. § 1404), the parties have assumed that New Hampshire choice of law governs their dispute over whether Florida's consumer protection statutes are applicable to this case.  They have, then, waived (or, perhaps more accurately in this case, forfeited) any argument that Florida's choice-of-law provisions apply.[3]

---

[3]    See generally Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) ("Where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.  A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.").

A.   New Hampshire's Choice-of-Law Principles.

In resolving choice-of-law questions, New Hampshire courts follow the guidance set forth in the Restatement (Second) of Conflict of Laws, § 187.  Ordinarily then, New Hampshire courts honor choice-of-law elections negotiated by contracting parties. See, e.g., Hobin v. Coldwell Banker Residential Affiliates, Inc., 144 N.H. 626, 628 (2000).  Nevertheless, "under the approach set forth in the Restatement (Second) of Conflict of Laws, . . . the parties' choice of law will not be honored when applying the chosen law would be contrary to a fundamental public policy of the state of the otherwise applicable law."  In re Scott, 160 N.H. 354, 364 (2010) (emphasis supplied; citation omitted).  See generally Restatement (Second) of Conflict of Laws, § 187.

Here, the "state of the otherwise applicable law" is plainly Florida, given that MBNF originally filed suit there, as well as Florida's substantial contact with the substance of the parties' contract (MBNF's MI-BOX franchise in Florida) and Florida's significant interest in protecting its resident (MBNF) under the scope of its consumer protection laws.  New Hampshire's connection to the formation, execution, and enforcement of the parties' contract is more limited, based

10

largely on the fact that MI-BOX is a New Hampshire-based limited liability company.

Through the statutes at issue here, Florida has expressed its public policy of protecting consumers who purchase franchised business opportunities.  New Hampshire lacks any such specific consumer protection laws.  Consequently, applying New Hampshire law would run afoul of Florida public policy.  Under New Hampshire's choice-of-law principles, then, Florida law applies at least to MBNF's claims arising under Florida's consumer protection statutes.

B.    The Parties' Choice-of-Law Agreement.

The parties' choice-of-law provision does not dictate otherwise.  That provision is set forth in Article IV, Section 4.6 of the contract and provides as follows:

> Applicable Law.  This Dealership Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of New Hampshire, and in the event of any disagreement, the laws of this state shall apply and suit must be brought in the State courts in Hillsborough County, New Hampshire or in the Federal District for the State of New Hampshire.

Dealership Agreement (document no. 1-1) at 29 of 52 (emphasis supplied).  That choice-of-law provision is narrow and governs

11

only the interpretation of the contract and any assessment of the parties' respective rights and obligations under that contract.  That is, the parties' choice-of-law provision assumes that the contract is valid and does not speak to the law governing its original formation.  The provision's limited scope naturally counsels in favor of limited application.

MBNF's Florida statutory claims do not relate to the parties' respective rights and obligations under the contract. Instead, they go to the very formation of that contract and whether MI-BOX was required to comply with Florida's consumer protection laws in order to form a valid and binding agreement with MBNF.  Consequently, a natural reading of the parties' choice-of-law provision also counsels in favor of applying Florida's consumer protection statutes to the parties' contract.

C.   Over-Arching Public Policy Concerns.

Finally, the application of New Hampshire, rather than Florida, law to the parties' dispute would be contrary to over-arching public policy considerations.  As this court (Barbadoro, J.) has recognized:

> The United States Supreme Court generally disapproves
> of choice-of-law clauses that operate "as a
> prospective waiver" of statutory remedies, noting that
> such clauses are "against public policy."  The

> principle has specific application in the securities
> fraud context, as courts have held that it is "against
> public policy to permit the use of choice of law
> clauses to circumvent [the] legislatively created
> shield" of state Blue Sky laws.

Gilbert v. Atlantic Trust Co., 2006 DNH 046, 2006 WL 1049707 at

*7 (D.N.H. April 19, 2006) (quoting Mitsubishi Motors Corp. v.

Soler Chrysler-Plymouth, 473 U.S. 614, 637 (1985)).  That

reasoning applies with equal force in this case.  MBNF is a

Florida limited liability company with its principle place of

business in Jacksonville, Florida.  The parties' contract grants

MBNF the exclusive right to operate its business using MI-BOX

products and trademarks in a specific territory that is located

entirely within the state of Florida.  See Dealership Agreement,

Appendix A (document no. 1-1) at 31 of 52.  Florida, then, has a

strong interest in the application of its consumer protection

laws to the formation of a contract to be performed within its

jurisdiction and involving one of its citizens (while, as noted,

New Hampshire lacks any such specific consumer protection

statutes).  Consequently, any interpretation of the contract's

choice-of-law provision to preclude application of Florida's

consumer protection statutes would be against over-arching

public policy principles.

In short, then, there are at least three reasons to apply the substantive law of Florida, rather than New Hampshire, to the parties' dispute - at least to the extent it involves claims related to the formation of the parties' contract, as opposed to the enforcement of that contract.  First, and perhaps most importantly, New Hampshire's choice-of-law rules counsel in favor of applying the substantive law of Florida.  Second, the scope of the parties' contractual choice of law provision is narrow and does not expressly (or even implicitly) apply to contract formation; its terms are limited exclusively to disputes arising under the contract.  Because MBNF's statutory claims do not involve the interpretation or enforcement of the contract itself, its choice-of-law provision does not address this situation.  And, finally, because courts disfavor efforts to circumvent otherwise-applicable consumer protection statutes, it would be against public policy to interpret the parties' choice-of-law provision in a manner that would operate as a "waiver" by MBNF of the protections afforded by Florida's consumer protection statutes.

In light of the foregoing, MBNF may proceed with count one (violation of the Florida Deceptive and Unfair Trade Practices Act) and count 3 (violation of the Florida Franchise Act).  Similarly, because MBNF's common law fraudulent inducement claim

14

(count two) goes to contract formation, rather than contract interpretation or enforcement, that claim, too, shall be interpreted under the provisions of Florida law.[4]

## Discussion

I.   <u>Violation of FDUTPA (Count One)</u>.

To prevail on its claim under the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA"), MBNF must establish three elements: (1) an unfair or deceptive trade practice; (2) detrimental reliance/causation; and (3) damages.  <u>See, e.g.</u>, <u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 869–70 (Fla. Dist. Ct. App. 2006) (collecting cases).  In addition, it must also "prove the unfair act or deceptive practice was likely to deceive a consumer acting reasonably in the same circumstances."  <u>Drone Nerds Franchising, LLC v. Childress</u>, No. 19-CIV-61153-RAR, 2020 WL 10698613, at *3 (S.D. Fla. May 19, 2020) (citations omitted).

FDUTPA defines an unfair or deceptive trade practice to include the violation of "any rules promulgated pursuant to the Federal Trade Commission Act."  Fla. Stat. § 501.203(3). Pursuant to the Trade Commission Act, the Federal Trade

---

[4]     Parenthetically, the court notes that neither party has identified any substantive difference between Florida and New Hampshire law as it relates to claims for fraudulent inducement.

15

Commission has implemented several regulations that govern the sale of franchises.  See 16 C.F.R. § 436.1, et seq.  Those regulations, which are generally known as the "Franchise Rule," require a franchisor to provide a prospective franchisee with a "Franchise Disclosure Document" that includes 23 categories of information about the franchisor.  Here, MBNF says MI-BOX violated the Franchise Rule by failing to provide MBNF with the required Franchise Disclosure Document.  That, in turn, says MBNF, violated FDUTPA.  See, e.g., Picktown Foods, LLC v. Tim Hortons USA, Inc., No. 17-21072-CIV, 2017 WL 9854073, at *1 (S.D. Fla. Nov. 8, 2017) ("Violations of the FTC Franchise Rule constitute a deceptive and unfair trade practice under the Florida Deceptive and Unfair Trade Practices Act.").

MI-BOX denies that it was required to provide the Franchise Disclosure Document, claiming it did not sell MBNF a franchise. Consequently, says MI-BOX, the Franchise Rule is inapplicable. The court disagrees.

The relevant federal regulations define a franchise as follows:

> Franchise means any continuing commercial relationship
> or arrangement, whatever it may be called, in which
> the terms of the offer or contract specify, or the

16

franchise seller promises or represents, orally or in writing, that:

(1) The franchisee will obtain the right to operate a business that is identified or associated with the franchisor's trademark, or to offer, sell, or distribute goods, services, or commodities that are identified or associated with the franchisor's trademark;

(2) The franchisor will exert or has authority to exert a significant degree of control over the franchisee's method of operation, or provide significant assistance in the franchisee's method of operation; and

(3) As a condition of obtaining or commencing operation of the franchise, the franchisee makes a required payment or commits to make a required payment to the franchisor or its affiliate.

16 C.F.R. § 436.1(h) (emphasis supplied).  Here, there is no serious debate that both the first and third elements of that test are met.  The parties' disagreement focuses on the second element: whether MI-BOX had a significant degree of control over MBNF's method of operation, and/or provided significant assistance in MBNF's method of operation.

According to MI-Box, it neither exerts significant control over MBNF's method of operation nor provides significant assistance in MBNF's method of operation.  Its argument on that point is, however, entirely undeveloped and unsupported by citations to record evidence, the parties' contract itself, or guiding precedent.  Instead, MI-BOX relies solely on a series of

17

general denials.  See, e.g., Defendant's Objection (document no. 67) at 3 ("Defendant denies that the cited description establishes operational control, franchise classification, or legal significance beyond the text of the agreements themselves, which speak for themselves.") and 5 ("Defendant admits that the Dealership Agreement addresses equipment acquisition.  Defendant denies that such terms confer operational control, mandate system support, or create a franchise or business opportunity requiring franchise registration or disclosure.").  See also Declaration of Edward Smith (document no. 61-1) at para. 9 ("Plaintiff's operations were not controlled by MI-BOX Florida on a day-to-day basis.  MI-BOX Florida did not control Plaintiff's staffing, pricing, local marketing spending, customer selection, vendor relationships, hiring decisions, or business strategy.  Plaintiff made independent operational and financial decisions.").

In response, MBNF points to the FTC Franchise Rule Guide,[5] which provides examples of the types of behavior and/or authority that constitute "significant control" by a franchisor over the franchisee:

---

[5]     Available at: https://www.ftc.gov/business-guidance/resources/franchise-rule-compliance-guide.

- site approval for unestablished businesses;
- site design or appearance requirements;
- hours of operation;
- production techniques;
- accounting practices;
- personnel policies;
- promotional campaigns requiring franchisee participation or financial contribution;
- restrictions on customers; and
- locale or area of operation.

Id. at 2.  "Significant types of assistance" are defined to include:

- formal sales, repair, or business training programs;
- establishing accounting systems;
- furnishing management, marketing, or personnel advice;
- selecting site locations;
- furnishing systemwide networks and website; and
- furnishing a detailed operating manual.

Id.  Factors of lesser significance when determining whether "significant control or assistance" is present in a relationship include:

- a requirement that a franchisee service or repair a product (except warranty work);
- inventory controls;
- required displays of goods; and
- on-the-job assistance with sales or repairs.

Id. at 3.

In support of its assertion that the parties' contract involved the sale of a "franchise" (rather than merely a

19

"business") and, therefore, implicates the requirements of both federal and Florida law governing the sale of franchises, MBNF points first to the contract itself.  As evidence that MI-BOX exerts significant "control" over MBNF's operation of the business, MBNF notes that the contract provides that:  MBNF must purchase lift systems and containers exclusively from MI-BOX, Dealership Agreement (document no. 61-1) at para. 1.1; MBNF must display MI-BOX's trademark on all lift systems and containers used by MBNF, Dealership Agreement, at para. 1.5; MBNF must maintain "in good condition the appearance of" all lift systems, containers, and any signage, Id.; MI-BOX has the right to "inspect any Lift Systems, Containers, signage, and promotional material" used by MBNF, Id.; MBNF shall be awarded an exclusive sales territory, provided it purchases a minimum number of containers from MI-BOX each year, totaling at least 1,500 containers over a thirteen year period, Id. at 2.8; and, for a period of one year, MBNF must use MI-BOX's "recommended vendors" to operate its dealership activities (e.g., insurance broker, apparel and merchandise supplier, accountant, storage box assembler, provider of moving supplies, etc.), Addendum to Dealership Agreement, at para. B.

As evidence that MI-BOX is required to provide MBNF with "significant assistance," MBNF notes that the contract requires

20

MI-BOX to furnish MBNF with operating manuals, software, access to the MI-BOX website, operational training, container assembly instructions, lift system training, tools required to assemble storage containers, and "customer support services."  Dealership Agreement, at para. 2.6.  See generally FTC Franchise Rule Guide, supra.

Beyond the contract itself, substantial extrinsic evidence also supports MBNF's assertion that MI-BOX does, indeed, sell franchises and, more specifically, that what MBNF purchased was a MI-BOX franchise, rather than merely a "dealership" or "business."  For example,

1.  In 2018 (well before the parties signed the contract at issue), the United States Small Business Administration recognized MI-BOX as a franchise.  See https://www.sba.gov/document /support-sba-franchise-directory (visited on February 1, 2026).

2.  Shortly after the parties executed the contract, MI-BOX itself publicly acknowledged that it is a franchise: "After much thought and legal consideration, MI-BOX elected to obtain franchise status in 2022 with the filing of our Franchise Disclosure Document to ensure all laws were followed properly."  https://getmiboxsystem.com/ what-is-mi-box (visited on February 1, 2022); and

3.  While no doubt an oversight, it is, perhaps, revealing that MI-BOX repeatedly refers to the "Dealership Agreement" between the parties as the "Franchise Agreement."  See Defendant's Opposition (document no. 67) at 3 and 4.  See

also Affidavit of Edward Smith, Managing Member of Mi-BOX (document no. 67-1) at paras. 5 and 8.

Based upon the evidence before the court, it is plain that the parties' Dealership Agreement involved the sale of a franchise by MI-BOX to MBNF.  Consequently, MI-BOX was obligated to provide MBNF with a detailed "Franchise Disclosure Document" in compliance with the requirements set forth in 16 C.F.R. § 436.5.  See also 16 C.F.R. § 436.2 ("In connection with the offer or sale of a franchise to be located in the United States of America or its territories, unless the transaction is exempted under subpart E of this part, it is an unfair or deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act for any franchisor to fail to furnish a prospective franchisee with a copy of the franchisor's current disclosure document, as described in subparts C and D of this part.") (emphasis supplied).

MI-BOX does not contend that its sale of a franchise to MBNF was exempted from the disclosure requirements discussed above, nor does it deny that it failed to provide MBNF with the federally-mandated Franchise Disclosure Document.  Such conduct is, by definition, an unfair and deceptive practice under the Federal Trade Commission Act ("FTCA").  It is also necessarily a violation of Florida's Deceptive and Unfair Trade Practices Act,

22

Fla. Stat. § 501.203(3) (making any violation of a rule promulgated pursuant to the FTCA a violation of FDUTPA).

But, as noted above, that does not end the matter.  Proof of an unfair and deceptive practice is only one element of a viable claim.  See Rollins, 951 So. 2d at 869-70; Drone Nerds Franchising, No. 19-CIV-61153-RAR, 2020 WL 10698613, at 3.  To prevail on its claimed entitlement to summary judgment, MBNF must also prove both detrimental reliance/causation and damages. In other words, that MBNF has demonstrated that MI-BOX violated the federal franchise rule (and, therefore, FDUTPA) does not compel the conclusion that MBNF is entitled to summary judgment on its FDUTPA claim.  As the federal district court for the Middle District of Florida has noted:

> Where a particular statutory violation is found to constitute a per se violation of FDUTPA, it is presumed that the violation constitutes a deceptive or unfair practice.  Therefore, when the statute at issue is a per se FDUTPA predicate, a plaintiff need not allege the first element of a FDUTPA claim.  However, regardless of whether a statute is a per se FDUTPA predicate or alleged to proscribe an unfair or deceptive practice and therefore serve as an implied FDUTPA predicate, a plaintiff is still required to plead the remaining two elements, causation and damages, in order to properly state a claim for a FDUTPA violation.

Parr v. Maesbury Homes, Inc., No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *8 (M.D. Fla. Dec. 22, 2009) (citations omitted).

23

See also Cluck-U Chicken, Inc. v. Cluck-U Corp., 358 F. Supp. 3d 1295, 1313 (M.D. Fla. 2017) (same); Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (same).

On those additional essential elements of its FDUTPA claim, MBNF's arguments fall well short of the mark - indeed, MBNF makes virtually no argument at all on the essential element of detrimental reliance.  Instead, it rests solely upon the fact that MI-BOX violated both the FTC's franchise regulations and FDUTPA by failing to provide the Franchise Disclosure Document. See, e.g., Plaintiff's Reply Memorandum (document no. 68) at 5 ("Plaintiff seeks summary judgment on its FDUTPA claim based solely on Defendant having sold a franchise without first providing Plaintiff with a copy of its Franchise Disclosure Document."); id. at 7 ("The deception here does not turn on subjective interpretations of informal communications.  Instead, it is established by Defendant's undisputed conduct of selling a franchise without providing an FDD."); id. at 8 ("Defendant sold a franchise to Plaintiff without first providing the FDD mandated by federal law.  That failure is unlawful in and of itself and therefore constitutes a per se unfair and deceptive act under FDUTPA, rendering Defendant's authorities legally inapposite and their 'question of fact' argument irrelevant.").

24

Typically, in cases of this sort, the plaintiff might establish "causation" by introducing an affidavit or deposition testimony from an authorized corporate agent stating that the plaintiff suffered a loss by virtue of the defendant's failure to disclose certain material information required by the Franchise Disclosure document.  Alternatively, they might point to material facts that would have been revealed had a Franchise Disclosure Document been provided - facts that were only discovered after the contract was signed (e.g., the franchisor's questionable financial state, prior bankruptcies, prior or ongoing litigation, the estimated initial investment for franchisees, etc.).  That is to say, a plaintiff might point to material facts which, if they had been timely revealed, might have prompted the plaintiff to decline to enter the contractual relationship at the outset.  Or, a plaintiff in a case of this sort might even provide an affidavit clearly and plainly stating that it would not have purchased the franchise if it had been provided the information required in the Franchise Disclosure document.  Here, MBNF has made no such argument.  Nor, necessarily has it provided supportive evidence in the form of affidavits or deposition testimony.

25

In short, then, MBNF has only established one of three essential elements to its claim under FDUTPA: that MI-Box committed an unfair and deceptive practice by failing to provide the required Franchise Disclosure Document.  What is lacking is evidence that the absence of the Franchise Disclosure document proximately caused MBNF to suffer specified damages.  Nor is there evidence that MBNF would not have entered into the contract if it had actually been provided with the information required in the Franchise Disclosure Document.  Given that, MBNF has not demonstrated entitlement to summary judgment on its FDUTPA claim.  In the context of summary judgment, "a laundry list of possibilities and hypotheticals" and "[s]peculation about mere possibilities, without more," is not sufficient. Tobin v. Fed. Express Corp., 775 F.3d 448, 451–52 (1st Cir. 2014).  Documentary evidence and/or uncontradicted sworn testimony is needed.

## II.    Fraudulent Inducement (Count Two).

To prevail on its claim for fraudulent inducement under Florida law, MBNF must establish "(1) that the defendant misrepresented a material fact; (2) that the defendant knew or should have known that the statement was false; (3) that the defendant intended that the representation would induce the plaintiff to enter into a contract or business relation; and (4)

that the plaintiff was injured by acting in justifiable reliance on the misrepresentation." Barnes v. Burger King Corp., 932 F. Supp. 1420, 1425 (S.D. Fla. 1996). See also Bradley Factor, Inc. v. United States, 86 F. Supp. 2d 1140, 1146 (M.D. Fla. 2000) (same). MBNF has not carried that burden.

According to MBNF, MI-BOX "knowingly supplied Plaintiff with fabricated and inflated financial performance projections, including pro formas, revenue forecasts, demand estimates, and cost-and-rate disclosures, all created internally by MI-BOX personnel and presented during the sales process." Plaintiff's Memorandum (document no. 65) at 20 (emphasis supplied). Moreover, says MBNF, "MI-BOX Florida's own corporate representative admitted that these numbers were not neutral templates, but example figures chosen by MI-BOX Florida's CFO and corporate staff to illustrate anticipated profitability and to persuade prospective purchasers to invest." Id. (emphasis supplied). See also Id. at 8 ("The pro forma was developed as a 'sales tool' and contained figures used to estimate future business performance. Smith testified that the pro forma 'was originally developed by corporate as a sales tool so that prospective, potential dealers could plug in their own numbers and come up with their own idea of what their expenses were going to be.' The pro forma provided to [MBNF] was pre-filled

27

with figures . . . using figures from corporate and from New England and Florida dealers.").

Even assuming those claims are true, MBNF has not pointed to any evidence suggesting that those documents were <u>materially false</u> (or materially "inflated").  Indeed, the only "evidence" of that sort is, according to MBNF, identified in paragraphs 33 and 34 of its Undisputed Statement of Material Facts.  <u>See</u> Plaintiff's Memorandum at 20 ("Plaintiff was induced to purchase an oversized and overpriced territory based on projected demand and profitability that MI-BOX knew had no factual foundation.") (citing its "Undisputed Statement of Material Facts," at paras. 33-34).  Yet those paragraphs do not exist (the last paragraph in that statement of facts is numbered 29).  <u>See</u> <u>Id</u>. at 9.  MBNF has not, for example, provided the court with actual sales numbers or revenue statements that might be compared with the allegedly false and materially misleading pro forma financial projections supplied by MI-BOX - that is to say, <u>evidence</u> that MBNF's actual annual revenue fell materially short of the allegedly false projections supplied by MI-BOX.

Moreover, MBNF concedes that those projections contained disclaimers saying that they were "for informational purposes only.  Revenue and expenses will vary between dealers and

28

locations." Id. at 8.  See also Deposition of Edward Smith
(document no. 66-1) at 83; Affidavit of Matt Bianco, Owner and
General Manager of MBNF (document no. 65-1) at para. 27.  Given
that, whether MBNF was entitled to rely upon those documents
would seem to be a factual question to be resolved by the trier-
of-fact.  At a minimum, MBNF has not identified any precedent
suggesting that such issues may be resolved as a matter of law.

At this juncture, the court cannot conclude that MBNF has
carried its burden.  Among other things, factual questions of
material falsity, reasonable and detrimental reliance, and
inducement remain unresolved.  Accordingly, as to its claim for
fraudulent inducement, MBNF is not entitled to summary judgment.

III. Rescission (Count Four).

Finally, MBNF seeks summary judgment on count four of its
complaint: "rescission."  But rescission is a remedy - an
equitable form of relief - rather than a free-standing cause of
action under Florida law.

> Rescission is an equitable remedy.  The prime object
> of rescission is "to undo the original transaction and
> restore the former status" of the parties.  To
> accomplish this result, a court of equity may use
> broad powers unavailable when a judgment is based on
> an action at law.  Where the remedy is justified
> because fraud has been established, a court "may set
> aside all transactions founded on it, however they may

have been effected, and notwithstanding any contrivance by which it may have been attempted to protect them, and may also treat acts as having been done which ought to have been done, and convert the party who has committed a fraud and profited by it into a trustee for the injured party."

Billian v. Mobil Corp., 710 So. 2d 984, 990 (Fla. Dist. Ct. App. 1998) (quoting Willis v. Fowler, 102 Fla. 35, 136 So. 358, 368 (1931)) (emphasis supplied).  See also TTSI Irrevocable Tr. v. ReliaStar Life Ins. Co., 60 So. 3d 1148, 1150 (Fla. Dist. Ct. App. 2011) (same).[6]

Because rescission is a remedy, rather than a cause of action, Count 4 of MBNF's complaint ("Rescission") fails to state a viable claim and is dismissed.  See generally Fed. R. Civ. P. 12(b)(6).  Nevertheless, MBNF's complaint adequately pleads "rescission" as a form of remedy in its prayer for relief.  Should MBNF prevail on its fraudulent inducement claim, it will be permitted to brief the issue of whether it has adequately demonstrated its entitlement to rescission.  See, e.g., Billian v. Mobil Corp., 710 So. 2d at 991 (noting the

---

[6]   The court notes that the same is true under New Hampshire law.  See, e.g., Ellis v. Candia Trailers & Snow Equip., Inc., 164 N.H. 457 (2012) ("Rescission is an equitable remedy the granting of which is always a matter within the sound discretion of the trial court, depending upon the circumstances of each particular case."); Mooney v. Nationwide Mut. Ins. Co., 149 N.H. 355, 357, 822 A.2d 567, 569 (2003) (same).

elements of proof a plaintiff must establish in order to demonstrate its entitlement to rescission); Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc., 174 So. 2d 614, 617 (Fla. Dist. Ct. App. 1965) (same).

## Conclusion

At this point, two things have been established.  First, Florida's substantive law applies to the parties' dispute.  And, second, MI-BOX committed an unfair and/or deceptive practice under both the federal Franchise Rule and FDUTPA when it sold a franchise to MBNF without providing the required Franchise Disclosure Document.  Nevertheless, MBNF has failed to demonstrate that there are no genuinely disputed material facts as to the remaining elements of its FDUTPA claim nor, necessarily, has it shown that it is entitled to judgment as a matter of law.  It has likewise failed to show its entitlement to summary judgment with respect to its fraudulent inducement claim.

As to Counts One (FDUTPA) and Two (fraudulent inducement) of its complaint, MBNF's Motion for Partial Summary Judgment (**document no. 65**) is necessarily denied.  Count Four of its complaint ("rescission") is dismissed for failure to state a viable cause of action.  And, finally, MI-BOX's request for

31

Relief under Rule 56(d), see Defendant's Objection (document no. 67) at 9-10, is denied.

       **SO ORDERED.**

                                   _____
                                   Steven J. McAuliffe
                                   United States District Judge

March 25, 2026

cc:  Counsel of Record